STATE of Minnesota, Respondent,

v.

**David VOSS, Appellant.**

No. A03–1241.

Court of Appeals of Minnesota.

July 20, 2004.

848

Mike Hatch, Attorney General, St. Paul, MN, and Paul M. Malone, Murray County Attorney, Slayton, MN, for respondent.

John M. Stuart, State Public Defender, Roy G. Spurbeck, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by MINGE, Presiding Judge, HARTEN, Judge, and HALBROOKS, Judge.

## OPINION

HARTEN, Judge.

Appellant challenges his convictions of and stayed sentences for two counts of fifth-degree controlled substance offense, arguing that firefighters, who were inside appellant's residence after extinguishing a fire and searching for the cause of the fire and for hotspots, exceeded the scope of their lawful presence by opening a disconnected basement freezer, where they discovered marijuana. Because the state failed to meet its burden to justify the search, and the state has not shown that the convictions were unattributable to the marijuana discovered in the freezer, we reverse.

## FACTS

Appellant David Voss began renting a farmhouse from Henry Van Dam in 1987. Although no written lease was signed,

appellant and Van Dam agreed that appellant would maintain and pay for any repairs to the property in exchange for occupying the house. By September 2001, appellant and his son had moved out of the house and his daughter lived there with her boyfriend. In late November 2001, appellant's daughter and her boyfriend moved out of the farmhouse.

On 12 January 2002, appellant and his son returned some of appellant's belongings to the house. After they finished, appellant's daughter-in-law arrived and they noticed smoke billowing from the top of the house. Appellant's son called 911 to report the fire.

A deputy sheriff was the first to arrive at the property and, after determining that nobody was inside the house, remained at the end of the driveway to help control traffic. By the time two local volunteer fire departments arrived, very dense smoke had filled the house, and the flames extended from the floor to the ceiling on the main level. Appellant assisted the firefighters by describing to them the house's floor plan before they entered. Once the fire was extinguished, several teams of firefighters searched throughout the house for hotspots and smoldering materials. One team opened an upstairs bedroom closet and discovered several marijuana plants growing inside. Another team of firefighters went into the basement and discovered three marijuana plants and a fluorescent light inside a chest freezer. The firefighters told the deputy sheriff about the marijuana plants, which were photographed and seized.

Appellant was subsequently charged with attempted third-degree controlled substance crime (sale/cultivation of five or more grams of marijuana), fifth-degree controlled substance crime (possession), and fifth-degree controlled substance crime (sale/cultivation). At the omnibus

hearing, appellant moved to suppress the evidence obtained during the firefighters' search, arguing that the deputy should have acquired a search warrant before entering the house and seizing the evidence. The district court denied the motion, finding that the deputy sheriff "did not make any search of the house and that the seizures were proper under the circumstances of this case." The jury found appellant guilty of the fifth-degree offenses. He now challenges the district court's denial of his suppression motion.[1]

## ISSUE

Did the district court err in denying appellant's motion to suppress the evidence obtained from the basement freezer?

## ANALYSIS

■ When reviewing pre-trial orders on motions to suppress evidence, where the facts are undisputed and the trial court's decision is a question of law, reviewing courts may independently review the facts to determine, as a matter of law, whether the evidence need be suppressed. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

■ The Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution protect individuals from unreasonable searches and seizures by the government. The state claims that, because the fire-

fighters' search of the residence was not state action, the Fourth Amendment does not apply.[2] The district court did not address whether the firefighters' search of the residence for hotspots constituted a search under the Fourth Amendment.

■ "A search occurs whenever government agents intrude upon an area where a person has a reasonable expectation of privacy." *State v. Carter*, 569 N.W.2d 169, 176 (Minn.1997) (citing *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986)). Administrative searches by firefighters, like searches by law enforcement, are subject to the Fourth Amendment. *Michigan v. Tyler*, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978).

> [T]here is no diminution in a person's reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman, or because his purpose is to ascertain the cause of a fire rather than to look for evidence of a crime, or because the fire might have been started deliberately. Searches for administrative purposes, like searches for evidence of crime, are encompassed by the Fourth Amendment.

*Id.* Therefore, a firefighter's search of a residence for hotspots is a search subject to constitutional limitations.[3]

1. Appellant also argues that the evidence was insufficient to support the jury's verdict and challenges his stayed sentences because both offenses involved a single behavioral incident. Because we reverse appellant's convictions, we need not address these issues.

2. Appellant claims that the state waived argument of this issue on appeal by failing to raise it at the district court. But at the omnibus hearing, the state argued that no search took place. We note that "[a] respondent can raise alternative arguments on appeal in defense of the underlying decision when there

are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted." *State v. Grunig*, 660 N.W.2d 134, 137 (Minn.2003).

3. A search by a private individual is also subject to Fourth Amendment analysis when the individual acts as an instrument or agent of the state when conducting the search. *State v. Buswell*, 460 N.W.2d 614, 618 (Minn. 1990). Here, the firefighters who searched the residence were members of volunteer fire

 Before searching an individual's residence, government agents generally must first obtain a warrant. *State v. Bunce,* 669 N.W.2d 394, 398 (Minn.App. 2003), *review denied* (Minn. 16 Dec. 2003). The state bears the burden to justify a warrantless search. *State v. Ture,* 632 N.W.2d 621, 627 (Minn.2001). But firefighters need not obtain a warrant before entering a building to fight a fire because "[a] burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.'" *Tyler,* 436 U.S. at 509, 98 S.Ct. at 1950. Once in the building, exigent circumstances allow firefighters and officials to remain on the premises for a "reasonable time to investigate the cause of the blaze," and any evidence that is in plain view may be seized. *Id.* at 510, 98 S.Ct. at 1950. Appellant concedes that the firefighters' search into the upstairs closet was reasonable as part of their search for hotspots and that the marijuana plants discovered in the closet were in plain view. But appellant argues that the search of the basement freezer exceeded the scope of the firefighters' reasonable search for hotspots and that the marijuana discovered inside was not in plain view.

 When ascertaining a "reasonable time to investigate," courts must consider and balance the exigencies that confront firefighters and the individuals' reasonable expectations of privacy. *Id.* at 510 n. 6, 98 S.Ct. at 1950 n. 6. "If, for example, the administrative search is justified by the immediate need to ensure against rekindling, the scope of the search may be no broader than reasonably necessary to achieve its end." *Michigan v. Clifford,*

464 U.S. 287, 294, 104 S.Ct. 641, 647, 78 L.Ed.2d 477 (1984).

Minnesota courts have not addressed the permissible scope of a firefighter's search during a "reasonable time to investigate" after a fire has been extinguished. But the Idaho Court of Appeals held that where a firefighter's search is not for fire investigation purposes, the search is not justified by exigent circumstances. *State v. Buterbaugh,* 138 Idaho 96, 57 P.3d 807, 811–12 (2002). In *Buterbaugh,* a firefighter discovered a hotspot in the basement, and electrical cords led from the hotspot to a large wooden box. *Id.* at 809. The court determined that the firefighter's search inside the box was justified as "legitimately a part of his investigation of the origin of the fire." *Id.* at 811. But the court held that another firefighter's routine walk-through and inventory search of upstairs bedrooms, where the fire had not reached, was not for the purpose of investigating the fire and was an illegal warrantless search. *Id.* at 811.

Here, the record reveals that the firefighters' search of the basement was for fire investigation purposes. At the omnibus hearing, the deputy explained that a search of the basement was necessary because, although the fire did not appear to reach the basement, hot embers may burn through a floor. Accordingly, the firefighters could lawfully discover any evidence in the basement that was in plain view. But the marijuana plants were not in plain view; the firefighters opened the top lid of the freezer and found the plants inside. *See State v. Licari,* 659 N.W.2d 243, 254 (Minn.2003) (where intrusion into a place is not justified by an exception to

---

departments. But the record is clear that they entered and searched the residence in their capacity as firefighters, not as private citizens. *See id.* (factors to determine if a search by a private party is subject to Fourth

Amendment limitations include: "(1) whether the government knew of and acquiesced in the search and (2) whether the search was conducted to assist law enforcement efforts or to further the private party's own end").

the warrant requirement, the seizure of evidence found inside is also invalid).

■ One would suppose that firefighters who are searching for hotspots after a fire may have articulable cause to open appliances or containers. Here, the problem is that the state did not establish that the search into the freezer was for fire investigation purposes: the deputy testified that he believed the firefighters "had a suspicion that the cord was not plugged in on the freezer and there was a hasp on the outside of the freezer which was not locked," and that "curiosity" led the firefighters to open the top lid of the freezer. Surprisingly, the state offered no further evidence to justify opening the freezer lid. Thus, the record justifies the intrusion as a matter of satisfying the firefighters' "curiosity." Accordingly, we conclude that the state failed to meet its burden to justify the warrantless search, and the district court was obliged to suppress the evidence obtained from the freezer.[4]

■ Notwithstanding the erroneous admission of evidence obtained from the freezer, appellant's convictions nonetheless may stand so long as they were "surely unattributable to the error." *State v. Juarez*, 572 N.W.2d 286, 291–92 (Minn.1997) (quotation omitted) (error must be harmless beyond a reasonable doubt). Appellant was convicted of two counts of fifth-degree controlled substance crime for violating Minn.Stat. § 152.025, subds. 1(1), 2(1) (2002), which prohibit the sale/cultivation and possession of one or more mixtures containing marijuana, "except a small amount of marijuana." A "small amount of marijuana" consists of 42.5 grams or less. Minn.Stat. § 152.01, subd. 16 (2002). Because the marijuana came from two sources within the house—the upstairs closet and the basement freezer— and resulted from one seizure that was lawful and the other unlawful, in order to convict appellant of fifth-degree controlled substance crime for the upstairs marijuana, the evidence must prove that the upstairs location provided more than 42.5 grams of marijuana. The evidence does not so indicate. At trial, the deputy testified that the seized marijuana plants from both locations were packaged and sent to the Minnesota Bureau of Criminal Apprehension (BCA) for analysis. The BCA report revealed that one package contained 21.0 grams of marijuana and a second package contained 40.4 grams of marijuana. But the deputy did not specify how the marijuana plants had been packaged.

Because the record is unclear as to how the marijuana plants were packaged and because each package alone consists of a "small amount of marijuana," we conclude that both guilty verdicts were not surely unattributable to the admission of the marijuana discovered in the basement freezer. Accordingly, appellant's convictions are reversed.

## DECISION

Because a firefighter's search is subject to constitutional analysis and the state failed to justify the search of the contents

---

4. The state claims that the firefighters had consent to search the entire house after appellant and his son called the fire department and showed the firefighters how to get through the house to put out the fire. A warrantless search of a residence is justified when a person with common authority over the residence consents to the search. *State v. Pilot*, 595 N.W.2d 511, 519 (Minn.1999). But the scope of a consent search is limited by the terms of its authorization. *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). Even if appellant consented to the search of the residence by reporting the fire to the fire department, the record does not indicate that the search into the disconnected freezer removed from the fire area was within the scope of appellant's consent for the firefighters to enter and search the residence to put out the fire.

of appellant's basement freezer, we conclude that the evidence of marijuana plants found inside the freezer should have been suppressed. Because appellant was convicted of possessing marijuana found at two different locations in the house, and the amount of marijuana was not specified by location, we reverse appellant's convictions.

**Reversed.**